

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  NOV 19 2010  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHIMON ROSENBERG, Individually, as
Legal Guardian of Moshe Tzvi Holtzberg
and as Personal Representative of the
Estates of Rivka Holtzberg and Gavriel
Noach Holtzberg;

NACHMAN HOLTZBERG, Individually
and on behalf of other family members, as
Surviving Father of Gavriel Noach
Holtzberg;

MOSES SHVARZBLAT, Individually and
as Personal Representative of the Estate of
Norma Shvarzblat-Rabinovich;

MARIBETH JESWANI, Individually and
as Personal Representative of the Estate of
Sandeep Jeswani; and

ANDREINA VARAGONA,

                         Plaintiffs,

               v.

LASHKAR-E-TAIBA (also known as Idara
Khidmat-e-Khalq, Jamat ud Dawa, Markaz
ud Dawa and Tehrik-e-Tahaffuz-e-Qibla
Awal); MOHAMAED HAFIZ SAYEED;
ZAKI ur REHMAN LAKHVI; SAJID
MAJID (also known as Sajid Mir); AZAM
CHEEMA; INTER-SERVICES
INTELLIGENCE of the ISLAMIC
REPUBLIC OF PAKISTAN; AHMED
SHUJA PASHA, NADEEM TAJ, MAJOR
IQBAL and MAJOR SAMIR ALI,

                         Defendants.

Civil Action No.: 10 5381

**COMPLAINT**

GLASSER. J.

**JURY TRIAL DEMANDED**
AZRACK, M.J.

Plaintiffs Shimon Rosenberg, Nachman Holtzberg and Moses Shvarzblat, by their attorneys Kreindler & Kreindler LLP and The Silverman Law Firm, and plaintiffs Maribeth Jeswani and Andreina Varagona, by their attorneys Kreindler & Kreindler LLP, allege the following:

## **PARTIES**

1.      Plaintiff SHIMON ROSENBERG is a citizen and resident of Israel, is the father of decedent Rivka Holtzberg and is the grandfather of Rivka Holtzberg's minor son Moshe Tzvi Holtzberg. Plaintiff Rosenberg has been appointed the Legal Guardian of Moshe Tzvi Holtzberg, who is a United States citizen, was a resident of Brooklyn, New York, and is currently a resident of Afula, Israel, by the Family Matters Court of Nazareth, Israel. Plaintiff Rosenberg has been appointed the Personal Representative of the Estates of Rivka Holtzberg, who was a resident of Israel and Mumbai, India, and Gavriel Noach Holtzberg, who was a United States citizen and resident of Brooklyn, New York and Mumbai, India, by the Family Matters Court of Tiberias, Israel. Plaintiff Rosenberg represents himself individually, the Estate of Rivka Holtzberg, the Estate of Gavriel Noach Holtzberg, the minor child Moshe Tzvi Holtzberg, and all other remaining survivors of Rivka Holtzberg.

2.      Plaintiff NACHMAN HOLTZBERG is a United States citizen and resident of Brooklyn, New York and is the father of decedent Gavriel Noach Holtzberg. Plaintiff Holtzberg represents himself individually and represents other remaining survivors of Gavriel Noach Holtzberg.

3.      Plaintiff MOSES SHVARZBLAT is a United States citizen and resident of Lakewood, New Jersey. Plaintiff Shvarzblat is the brother of decedent Norma Shvarzblat-Rabinovich, a citizen and resident of Israel and Mexico. Plaintiff Shvarzblat has been or will be

2

appointed the Personal Representative of the Estate of Norma Shvarzblat-Rabinovich by the

Surrogate's Court for Ocean County, New Jersey.  Plaintiff Shvarzblat represents himself

individually, the Estate of Norma Shvarzblat-Rabinovich and all remaining survivors of Norma

Shvarzblat-Rabinovich.

4.     Plaintiff MARIBETH JESWANI is a United States citizen and resident of Cook

County, Illinois.  Plaintiff Jeswani is the wife of decedent Sandeep Jeswani, a United States

citizen and resident of Cook County, Illinois.  Plaintiff Jeswani has been or will be appointed the

Personal Representative of the Estate of Sandeep Jeswani by the Circuit Court of Cook County,

Illinois, Law Division.  Plaintiff Jeswani represents herself individually, the Estate of Sandeep

Jeswani and all remaining survivors of Sandeep Jeswani.

5.     Plaintiff ANDREINA VARAGONA is a United States citizen and resident of

Nashville, Tennessee.

6.     Defendant LASHKAR-E-TAIBA, also known as Lashkar-e Tayyiba, Idara

Khidmat-e-Khalq, Jamat ud Dawa, Markaz ud Dawa and Tehrik-e-Tahaffuz-e-Qibla Awal,

("LeT") is and was at all relevant times an organization committing acts of international

terrorism intended to reach victims who were citizens and residents of, among other places, the

United States.  LeT is and was based primarily in Pakistan, although at all relevant times it also

maintained cells in Afghanistan, India, Bangladesh, Iraq and the United States.  LeT has

previously committed terrorist attacks against United States citizens in India and Iraq.  At the

times relevant to this action, the United States government had designated LeT a Foreign

Terrorist Organization pursuant to Section 219 of the Immigration and Nationality Act (8 U.S.C.

§ 1189), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996.  At the

3

times relevant to this action, the United States Department of the Treasury had designated LeT as a "specially designated global terrorist" entity pursuant to 31 C.F.R. 595 and 31 C.F.R. 596.

7. Defendant MOHAMAED HAFIZ SAYEED ("Sayeed") is and was at all relevant times a leader, officer and/or director of LeT. At the times relevant to this action, the United States Department of the Treasury had designated Sayeed as a "specially designated global terrorist" pursuant to 31 C.F.R. 595 and 31 C.F.R. 596.

8. Defendant ZAKI ur REHMAN LAKHVI ("Lakhvi") is and was at all relevant times a leader, officer and/or director of LeT. At the time relevant to this action, the United States Department of the Treasury had designated Lakhvi as a "specially designated global terrorist" pursuant to 31 C.F.R. 595 and 31 C.F.R. 596.

9. Defendant AZAM CHEEMA ("Cheema") is and was at all relevant times a leader, officer and/or director of LeT. The United States Department of the Treasury has designated Cheema as a "specially designated global terrorist" pursuant to 31 C.F.R. 595 and 31 C.F.R. 596.

10. Defendant SAJID MAJID, also known as Sajid Mir, ("Majid") is and was at all relevant times a leader, officer and/or director of LeT.

11. Defendant INTER-SERVICES INTELLIGENCE ("ISI") is and at all relevant times was a Pakistani organization carrying out intelligence gathering and operations domestically and internationally on behalf of the military of the Islamic Republic of Pakistan ("Pakistan"). The ISI has long nurtured and used international terrorist groups, including LeT, to accomplish its goals and has provided material support to LeT and other international terrorist groups.

4

12.     Defendant AHMED SHUJA PASHA ("Pasha") was, since September 2008, and currently is the Director General of the ISI.

13.     Defendant NADEEM TAJ ("Taj") was the Director General of the ISI from September 2007 until September 2008.

14.     Defendant MAJOR IQBAL ("Iqbal") is and was at all relevant times an officer, employee and/or agent of ISI.

15.     Defendant MAJOR SAMIR ALI ("Ali") is and was at all relevant times an officer, employee and/or agent of ISI.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1332 (diversity jurisdiction), 28 U.S.C. § 1350 (alien tort claims act) and 28 U.S.C. §2333 (civil remedies).

17.     The acts alleged herein constitute the provision of material support or resources for terrorist acts, including but not limited to the targeting, injuring and killing of United States citizens, and subject all defendants to this Court's personal and subject matter jurisdiction. *See* 28 U.S.C. § 1605A and 18 U.S.C. § 2339.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 (d), in that, as foreign aliens, defendants may be sued in any district. Venue is also proper in this court as several of the plaintiffs reside in this district.

## STATEMENT OF FACTS

19.     Commencing on November 26, 2008, LeT terrorists besieged Mumbai, killing 166 people and wounding at least 304 people over the course of four days India (the "Mumbai terrorist attack"). The terrorist attacks took place at numerous locations including the Chabad

5

House, the Oberoi Trident Hotel, the Taj Mahal Hotel, the Leopold Café, the Cama and Allbless Hospital, the Metro Cinema and the CST Railway Station.

20.     Ten LeT terrorists, all of Pakistani nationality, mounted the attacks. Nine of those ten were killed during the siege.

21.     The Mumbai terrorist attack was planned, trained for and carried out by members of defendant LeT. Defendant ISI provided critical planning, material support, control and coordination of the attacks.

### The History of LeT and ISI

22.     LeT was founded in the late 1980s to form the military wing of a proselytizing group named Markaz Dawa wal Irshad.

23.     The initial leaders of LeT were defendant Sayeed, a Pakistani cleric, and defendant Lakhvi, a mujahedeen experienced in anti-Soviet battles in Afghanistan.

24.     LeT has previously undertaken numerous terrorist acts in India, including attacks in New Delhi and Bangalore, an attack on the Indian Parliament and a previous attack in Mumbai.

25.     Following the September 11, 2001 attacks in the United States, and as part of a general crackdown on terrorist groups operating from bases in Pakistan, the government of Pakistan banned LeT from operating inside Pakistan's borders. LeT immediately renamed itself Jamat ud Dawa and carried on activities openly, including virulent anti-United States rhetoric and advocacy of international terrorism.

26.     LeT operated and still operates training camps in Pakistan. The main camps are located at Muridke, Manshera and Muzaffarabad. LeT also maintained and still maintains mobile camps throughout Pakistan, Kashmir and Afghanistan.

27.     Defendant Sayeed chose operational destinations for graduates of the LeT camps.

28.     LeT has openly advocated violence against India, Israel and the United States. LeT's propaganda depicts its own attempts to simultaneously attack those three countries.

### Planning and Training for the Mumbai Attack

29.     The ten LeT members who undertook the on-the-ground Mumbai terrorist attack underwent extensive training in the LeT camps in Pakistan. All members of the LeT camps were trained in the use of firearms, explosives and counter-interrogation, and were indoctrinated as to the purported need and justification for suicide attacks.

30.     According to the United States Department of the Treasury, defendant "Cheema has also been described as LeT's surveillance or intelligence chief and has been involved in LeT's training activities, specifically training LeT members in bomb making and skills needed to infiltrate India. The cell that carried out the November 2008 terrorist attacks in Mumbai, India received some of their training from Cheema." Treasury Press Release TG-944, November 4, 2010.

31.     Starting in or around 2002, a Chicago resident of Pakistani descent named Daoud Gilani and also known as David Headley ("Headley"), at the behest of the LeT and ISI defendants, began to build a network of connections extending from Chicago, Illinois to Pakistan for the purpose of preparing for an international terror attack in Mumbai. Part of Headley's planning and fundraising efforts took place in New York City, where he also lived for part of the time that he was working and coordinating with the LeT and ISI defendants in planning the Mumbai terrorist attack. Headley began to learn how to use small-caliber weapons and was trained in spycraft and surveillance methods by defendant Iqbal. Headley undertook these efforts at the direction and with the material support of both LeT and the ISI.

7

32.      In part to fund and facilitate the planned international terror attack, in 2006, Headley and another Chicago-based individual named Tahawur Hussain Rana ("Rana") opened an office advertised as "First World Immigration" in Mumbai. Rana owned similarly-named businesses providing immigration services in, among other places, Chicago and New York City. From the Mumbai First World Immigration office, Headley performed reconnaissance of the sites of the Mumbai attacks including the Chabad House, the Oberoi Trident Hotel, the Taj Mahal Hotel, the CST Railway station and the Leopold Café.

33.      In September 2007 Headley communicated with LeT leaders and the ISI regarding his surveillance trips from Chicago to Mumbai. Headley provided LeT and the ISI with oral and video reports of his surveillance of the Mumbai sites and received instructions regarding further reconnaissance trips.

34.      In March, April and July 2008, Headley again made reconnaissance trips from Chicago to Mumbai for the purposes of locating possible landing sites in or around Mumbai harbor. At the instruction of LeT and the ISI, Headley used a global positioning system ("GPS") device for this surveillance. Prior to and following each trip to Mumbai, Headley reported to and received further instructions from both LeT, including defendant Majid and defendant Iqbal, and the ISI.

35.      In September 2008, the ten LeT attackers were moved to Karachi and installed in an ISI/LeT safe house and isolated from outside contact. They were closely monitored by defendant Lakhvi and other LeT leaders and were trained in how to handle and operate small boats, navigation, explosives, satellite phone, cellular phone and GPS usage during their time in Karachi. On at least two occasions, defendant Lakhvi was present during the training. While

staying in the Karachi safe house, those ten members of LeT received specific instructions on the Mumbai targets.

36.     The safe house was part of ISI's "Karachi Project," an initiative by which anti-Indian groups were tasked and/or supported by the ISI in a surreptitious fashion to engage in acts of international terrorism.

37.     The maritime training for the Mumbai terrorist attack took place in two boats, the al Husaini and the al Fouz, at least one of which was bought with funds provided by the ISI. During the period that Headley communicated with and took directions from the ISI regarding the Mumbai plot, defendant Taj, as ISI's Director-General, exerted full command and control over the ISI. During the final two months of training of the LeT attackers and throughout the attack, defendant Pasha exerted full command and control over the ISI.

### The Mumbai Attack

38.     The LeT attackers left Karachi, Pakistan by boat on the morning of November 22, 2008. During the afternoon of the next day, the LeT attackers hijacked an Indian fishing vessel, the M/V Kuber and its five crewmembers. Four of the crewmembers of the M/V Kuber were killed and the hijackers forced the captain to navigate the ship to Mumbai. Four miles offshore of Mumbai, the hijackers' leader, Ismail Khan, contacted his handler in Pakistan who directed Khan to kill the captain. Khan did so.

39.     The LeT attackers then boarded an inflatable boat, traversed the four miles to shore and landed in South Mumbai after dark on the evening of November 23, 2008.

40.     After landing in Mumbai, the ten LeT attackers paired off into five teams of two men each. The ten men targeted the Chabad House, the Oberoi-Trident Hotel, the CST Railway Station, the Leopold Café and Bar and the Taj Mahal Hotel, and proceeded to attack those sites

9

with the firearms, bombs and explosive devices they brought with them from Karachi. The LeT attackers used AK-47 assault rifles, hand grenades and RDX-based explosive devices with the intention to do violence to, terrorize and cause panic amongst their victims.

41.     Gavriel Noah Holtzberg and his wife Rivka Holtzberg were killed by LeT attackers at the Chabad House. Rivka Holtzberg was approximately five months pregnant at the time of her death. The unborn child was killed in the attack.

42.     Moshe Holtzberg, the two year-old son of Gavriel and Rivka Holtzberg, witnessed the attack on the Chabad House and the murder of both of his parents. Moshe's caregiver, Sandra Samuel, rescued him and they both survived the attack on the Chabad House.

43.     Norma Shvarzblat-Rabinovich was killed by LeT attackers at the Chabad House.

44.     Sandeep Jeswani was killed by LeT attackers at the Oberoi-Trident Hotel.

45.     Andreina Varagona was shot in her right leg and right arm by LeT attackers at the Oberoi-Trident Hotel

46.     Alan Scherr, a United States citizen, and his 13 year-old daughter Naomi Scherr, also a United States citizen, were killed by LeT attackers at the Oberoi-Trident Hotel.

47.     Another United States citizen, Bentzion Chroman, was killed by LeT attackers at the Chabad House.

48.     Another United States citizen, Leibish Teitlebaum, was killed by LeT attackers at the Chabad House. Mr. Teitlebaum's eight surviving children all currently live in Brooklyn, New York.

49.     During the Mumbai attacks, defendant Majid along with other LeT officers operated from a mission control room in Karachi, Pakistan. They passed instructions and encouragement to the attackers via telephone.

10

50.     During the attack on the Chabad House, the LeT attackers received instructions
via telephone from their controllers in Pakistan who warned them about helicopters and
commandos landing on the Chabad House terrace. The attackers were instructed by defendant
Majid to kill everyone in Chabad House.

51.     During the attack at the Oberoi-Trident Hotel, the LeT attackers were instructed
by their controllers to shoot at and kill any United States or Israeli guests.

52.     United States citizens, Israelis and other foreigners were targeted during the
attacks. LeT controllers in Pakistan instructed the LeT attackers in Mumbai to kill these
foreigners.

## Investigations following the attack

53.     The government of Pakistan charged and arrested several LeT leaders in relation
to the Mumbai attacks. Defendant Lakhvi and others are currently on trial on those charges.
Following defendant Lakhvi's arrest, defendant Pasha met with him in prison to discuss the
Mumbai attacks.

54.     Defendant Sayeed was placed under house arrest by Pakistani authorities
following the Mumbai attacks. In June 2009, the Lahore High Court released Sayeed after the
Pakistani authorities declined to provide the court with evidence linking him to the attack. A
Pakistani government minister stated that Pakistan had refused to share with the Indian court
"confidential information" relating to Sayeed's involvement with the Mumbai attack. On
October 27, 2009, Interpol issued provisional warrants called Red Corner Notices for the arrests
of defendants Sayeed and Lakhvi in relation to the Mumbai attacks.

55.     On July 21, 2010, an Indian judge issued warrants for the arrests of defendants
Iqbal and Ali in relation to the Mumbai attacks. On October 7, 2010, Interpol issued provisional

11

warrants called Red Corner Notices for the arrests of defendants Iqbal, Ali, and Majid in relation to the Mumbai attacks.

56. According to G.K. Pillai, the Indian Home Secretary, the ISI was "literally controlling and coordinating [the Mumbai attack] from the beginning till the end." *Idea Exchange*, Indian Express Newspaper, July 17, 2010.

## COUNT ONE

### WRONGFUL DEATH CLAIMS AGAINST
### LeT, SAYEED, LAKHVI, CHEEMA and MAJID

57. Plaintiffs restate the allegations in paragraphs 9 – 56 above as if fully set forth herein.

58. On and prior to November 26, 2008, LeT, Sayeed, Lakhvi, Cheema and Majid were directly engaged in acts of international terrorism (including but not limited to acts of torture, extrajudicial killing, sabotage and hostage taking), which acts were intended to target, hurt and kill United States citizens, among others.

59. On and prior to November 26, 2008, LeT, Sayeed, Lakhvi, Cheema and Majid were directly engaged in the provision of material support or resources (including but not limited to provision of property; services; currency, monetary instruments or financial securities; financial services; lodging; training; expert advice or assistance; safehouses; false documentation or identification; communications equipment; facilities; weapons; lethal substances; explosives; personnel and/or transportation) to further and aid the international acts of torture, extrajudicial killing, sabotage and hostage taking, which acts were intended to and did target, hurt and kill United States citizens, among others.

60. On and prior to November 26, 2008, LeT, Sayeed, Lakhvi, Cheema and Majid directed, engaged and/or relied upon the efforts of United States-based individuals, including but

12

not limited to Headley and Rana, for raising funds, building a network of connections, recruiting participants and planning the operation of the Mumbai terrorist attack.

61. The support, planning, organization and funding of the Mumbai terrorist attack came from, among other places, United States sources.

62. The actions of LeT, Sayeed, Lakhvi, Cheema and Majid constitute direct "acts of international terrorism" as defined in 18 U.S.C. § 2331 and further constitute violations of the criminal laws of the United States, including, but not limited to, the provisions set forth in 18 U.S.C. §§ 2339A, 2339B and 2339C, which prohibit the provision of material support and resources to terrorist organizations. These actions were dangerous to human life, transcended national boundaries and were intended to (or would reasonably be interpreted as intending to) intimidate or coerce a civilian population or to influence the policy of a government by intimidation or coercion.

63. As a direct and proximate result of the direct acts of international terrorism committed by LeT, Sayeed, Lakhvi, Cheema and Majid, as set forth above, those defendants have caused plaintiffs representing decedents, those plaintiffs' decedents and those plaintiffs' decedents' family members to suffer severe and permanent injuries, damages and losses, including but not limited to the following:

> a. Economic damages, including but not limited to, the pecuniary losses suffered by plaintiffs and decedents' remaining survivors, as a result of decedents' deaths, including but not limited to, loss of support, loss of services, loss of parental care and guidance, and loss of prospective inheritance; and

13

b. Non-economic damages, including but not limited to, the loss of consortium, solarium, society, companionship, care, comfort and love suffered by Plaintiffs and decedents' other survivors.

64. By reason of the foregoing, LeT, Sayeed, Lakhvi, Cheema and Majid are each liable to each plaintiff, individually and as the personal representative and/or surviving family member of their decedents, for compensatory damages in excess of $75,000, such amount to be determined by a jury.

65. Further, for their willful, wanton and criminal misconduct, LeT, Sayeed, Lakhvi, Cheema and Majid are each liable to each plaintiff, individually and as the personal representative and/or surviving family member of their decedents, for punitive damages in excess of $75,000, such amount to be determined by a jury.

66. This Court has the authority and jurisdiction to hear plaintiffs claims and award plaintiffs damages pursuant to 28 U.S.C. §§1331 (federal question), 1332 (diversity jurisdiction), 1350 (alien tort claims act) and 2333 (civil remedies).

## COUNT TWO

### WRONGFUL DEATH CLAIMS AGAINST
### ISI, PASHA, TAJ, IQBAL and ALI

67. Plaintiffs restate the allegations in paragraphs 9 – 56 above as if fully set forth herein.

68. On and prior to November 26, 2008, ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI) were purposefully engaged in the direct provision of material support or resources (including but not limited to provision of property; services, including currency or monetary instruments; financial securities; financial services; lodging; training; expert advice or assistance; safehouses; false documentation or identification;

14

communications equipment; facilities; weapons; lethal substances; explosives; personnel; and/or transportation) to further international acts of torture, extrajudicial killing, sabotage and hostage taking, which acts were intended to and did target hurt and kill United States citizens, among others.

69.     On and prior to November 26, 2008, ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI) directed, engaged and/or relied upon the efforts of United States-based individuals, including but not limited to Headley and Rana, for raising funds, building a network of connections, recruiting participants and planning the operation of the Mumbai terrorist attack.

70.     The support, planning, organization and funding of the Mumbai terrorist attack came from, among other places, United States sources.

71.     As a direct and proximate result of the direct acts committed by the ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees if ISI), as set forth above, those defendants have caused plaintiffs, plaintiffs' decedents and plaintiffs' decedents' family members to suffer severe and permanent injuries, damages and losses, including but not limited to the following:

> a. Economic damages, including but not limited to, the pecuniary losses suffered by plaintiffs and decedents' remaining survivors, as a result of decedents' deaths, including but not limited to, loss of support, loss of services, loss of parental care and guidance, and loss of prospective inheritance; and
>
> b. Non-economic damages, including but not limited to, the loss of consortium, solarium, society, companionship, care, comfort and love suffered by plaintiffs and decedents' other survivors.

72.     By reason of the foregoing, defendants ISI, Pasha, Taj, Iqbal and Ali are each liable to each plaintiff, individually and as the personal representative and/or surviving family member of their decedents, for compensatory damages in excess of $75,000, such amount to be determined by a jury.

73.     Further, for their willful, wanton and criminal misconduct, defendants ISI, Pasha, Taj, Iqbal and Ali are each liable to each plaintiff, individually and as the personal representative and/or surviving family member of their decedents, for punitive damages in excess of $75,000, such amount to be determined by a jury.

74.     This Court has the authority and jurisdiction to hear plaintiffs claims and award plaintiffs damages pursuant to 28 U.S.C. §§1331 (federal question), 1332 (diversity jurisdiction), 1350 (alien tort claims act) and 2333 (civil remedies).

### COUNT THREE

### WRONGFUL DEATH CLAIMS FOR AIDING AND ABETTING AGAINST ISI, PASHA, TAJ, IQBAL and ALI

75.     Plaintiffs restate the allegations in paragraph 9 – 56 and 68 – 70 above as if fully set forth herein.

76.     On and prior to November 26, 2008, the ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of the ISI) acted to advance the goals of LeT, Sayeed, Lakhvi, Cheema and Majid to terrorize, kill and hurt, among others, United States citizens (which conduct violated, among other things, United States statutes prohibiting international acts of terrorism) by aiding and abetting the planning and execution of the Mumbai attacks.

77.     The support, planning, organization and funding of the Mumbai terrorist attack came from, among other places, United States sources.

16

78.     As a direct and proximate result of the acts of aiding and abetting the planning

and execution of the Mumbai attacks committed by the ISI, Pasha, Taj, Iqbal and Ali (as well as

other officials, agents and employees if ISI), as set forth above, those defendants have caused

plaintiffs, plaintiffs' decedents and plaintiffs' decedents' family members to suffer severe and

permanent injuries, damages and losses, including but not limited to the following:

      a.   Economic damages, including but not limited to, the pecuniary losses suffered by

          plaintiffs and decedents' remaining survivors, as a result of decedents' deaths,

          including but not limited to, loss of support, loss of services, loss of parental care

          and guidance, and loss of prospective inheritance; and

      b.   Non-economic damages, including but not limited to, the loss of consortium,

          solarium, society, companionship, care, comfort and love suffered by Plaintiffs

          and decedents' other survivors.

79.     By reason of the foregoing, defendants ISI, Pasha, Taj, Iqbal and Ali are each

liable to each plaintiff, individually and as the personal representative and/or surviving family

member of their decedents, for compensatory damages in excess of $75,000, such amount to be

determined by a jury.

80.     Further, for their willful, wanton and criminal misconduct, defendants ISI, Pasha,

Taj, Iqbal and Ali are each liable to each plaintiff, individually and as the personal representative

and/or surviving family member of their decedents, for punitive damages in excess of $75,000,

such amount to be determined by a jury.

81.     This Court has the authority and jurisdiction to hear plaintiffs claims and award

plaintiffs damages pursuant to 28 U.S.C. §§1331 (federal question), 1332 (diversity jurisdiction),

1350 (alien tort claims act) and 2333 (civil remedies).

17

## COUNT FOUR

### SURVIVAL CLAIMS AGAINST
### LeT, SAYEED, LAKHVI, CHEEMA and MAJID

82. Plaintiffs restate the allegations in paragraphs 9 – 56 and 58 – 62 above as if fully set forth herein.

83. As a direct and proximate result of the direct acts of defendants LeT, Sayeed, Lakhvi, Cheema and Majid, decedents suffered conscious pain and suffering and fear of their impending deaths, entitling their estates to compensatory damages under governing law.

84. By reason of the foregoing, defendants LeT, Sayeed, Lakhvi, Cheema and Majid are each liable to each plaintiff, as the personal representative of their decedents, for compensatory damages in excess of $75,000, such amount to be determined by a jury.

85. Further, for their willful, wanton and criminal misconduct, defendants LeT, Sayeed, Lakhvi, Cheema and Majid are each liable to each plaintiff, individually and as the personal representative and/or surviving family member of their decedents, for punitive damages in excess of $75,000, such amount to be determined by a jury.

86. This Court has the authority and jurisdiction to hear plaintiffs claims and award plaintiffs damages pursuant to 28 U.S.C. §§1331 (federal question), 1332 (diversity jurisdiction), 1350 (alien tort claims act) and 2333 (civil remedies).

## COUNT FIVE

### SURVIVAL CLAIMS AGAINST
### ISI, PASHA, TAJ, IQBAL and ALI

87. Plaintiffs restate the allegations in paragraphs 9 – 56 and 68 – 70 above as if fully set forth herein.

18

88.     As a direct and proximate result of the direct acts of ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI), decedents suffered conscious pain and suffering and fear of their impending deaths, entitling their estates to compensatory damages under governing law.

89.     By reason of the foregoing, defendants ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI) are each liable to each plaintiff, as the personal representative of their decedents, for compensatory damages in excess of $75,000, such amount to be determined by a jury.

90.     Further, for their willful, wanton and criminal misconduct, defendants ISI, Pasha, Taj, Iqbal and Ali are each liable to each plaintiff, individually and as the personal representative and/or surviving family member of their decedents, for punitive damages in excess of $75,000, such amount to be determined by a jury.

91.     This Court has the authority and jurisdiction to hear plaintiffs claims and award plaintiffs damages pursuant to 28 U.S.C. §§1331 (federal question), 1332 (diversity jurisdiction), 1350 (alien tort claims act) and 2333 (civil remedies).

### COUNT SIX

### SURVIVAL CLAIMS FOR AIDING AND ABETTING AGAINST ISI, PASHA, TAJ, IQBAL and ALI

92.     Plaintiffs restate the allegations in paragraph 9 – 56 and 68 – 70 above as if fully set forth herein.

93.     On and prior to November 26, 2008, the ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of the ISI) acted to advance the goals of LeT, Sayeed, Lakhvi, Cheema and Majid to terrorize, kill and hurt, among others, United States citizens

19

(which conduct violated, among other things, United States statutes prohibiting international acts of terrorism) by aiding and abetting the planning and execution of the Mumbai attacks.

94.     The support, planning, organization and funding of the Mumbai terrorist attack came from, among other places, United States sources.

95.     As a direct and proximate result of the acts of the ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI) to aid and abet LeT, Sayeed, Lakhvi, Cheema and Majid, decedents suffered conscious pain and suffering and fear of their impending deaths, entitling their estates to compensatory damages under governing law.

96.     By reason of the foregoing, defendants ISI, Pasha, Taj, Iqbal and Ali are each liable to each plaintiff, individually and as the personal representative and/or surviving family member of their decedents, for compensatory damages in excess of $75,000, such amount to be determined by a jury.

97.     Further, for their willful, wanton and criminal misconduct, defendants ISI, Pasha, Taj, Iqbal and Ali are each liable to each plaintiff, individually and as the personal representative and/or surviving family member of their decedents, for punitive damages in excess of $75,000, such amount to be determined by a jury.

98.     This Court has the authority and jurisdiction to hear plaintiffs claims and award plaintiffs damages pursuant to 28 U.S.C. §§1331 (federal question), 1332 (diversity jurisdiction), 1350 (alien tort claims act) and 2333 (civil remedies).

### COUNT SEVEN

### PERSONAL INJURY CLAIMS AGAINST
### LeT, SAYEED, LAKHVI, CHEEMA and MAJID

99.     Plaintiffs restate the allegations in paragraphs 9 – 56 and 58 – 62 above as if fully set forth herein.

100. During the planning and execution of the Mumbai terrorist attack, defendants LeT, Sayeed, Lakhvi, Cheema and Majid acted intentionally and recklessly.

101. During the planning and execution of the Mumbai terrorist attack, the conduct of defendants LeT, Sayeed, Lakhvi, Cheema and Majid was extreme and outrageous. This extreme and outrageous conduct included, but was not limited to, (a) taking hostages in the Mumbai Chabad House and directing that the hostages, including Moshe Tzvi Holtzberg's father and mother, who was pregnant with Moshe's sibling at the time of her killing, be violently murdered, despite that occurring in plain view of the infant Moshe Tzvi Holtzberg; and, (b) taking hostages at the Oberoi Trident Hotel and directing that those hostages, including plaintiff Varganoa's dining companions Naomi Scherr and Alan Scherr, be violently murdered in plain view of plaintiff Varagona; and directing that plaintiff Varagona be shot.

102. As a direct and proximate result of the direct acts of international terrorism committed by the ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees if ISI), as set forth above, those defendants have caused plaintiff Varagona and the infant Moshe Tzvi Holtzberg to suffer severe and permanent physical, mental and emotional injuries, damages and losses, including but not limited to the following:

> a. Non-economic damages, including but not limited to, losses suffered as a result of their physical, mental and emotional injuries, including pain and suffering and their loss of enjoyment of life; and
>
> b. Economic damages, including but not limited to the loss of earnings (plaintiff Varagona only), loss of earning capacity and medical expenses.

103. As a direct and proximate result of the intentional, reckless, extreme and outrageous acts of LeT, Sayeed, Lakhvi, Cheema and Majid, infant Moshe Tzvi Holtzberg and

21

plaintiff Varagona have and continue to suffer from severe emotional distress and plaintiff Varagona has continued to suffer from her physical injuries.

104.    Defendants LeT, Sayeed, Lakhvi, Cheema and Majid intended for Moshe Tzvi Holtzberg and plaintiff Varagona to suffer from their severe injuries and distress or were aware of a high probability that their conduct would cause such injuries and distress.

105.    By reason of the foregoing, defendants LeT, Sayeed, Lakhvi, Cheema and Majid are each liable to plaintiff Shimon Rosenberg, as Legal Guardian for the infant Moshe Tzvi Holtzberg, and plaintiff Varagona for compensatory damages in excess of $75,000, such amount to be determined by a jury.

106.    Further, for their willful, wanton and criminal misconduct, defendants LeT, Sayeed, Lakhvi, Cheema and Majid are each liable to plaintiff Shimon Rosenberg, as Legal Guardian for the infant Moshe Tzvi Holtzberg, and plaintiff Varagona for punitive damages in excess of $75,000, such amount to be determined by a jury.

107.    This Court has the authority and jurisdiction to hear plaintiffs claims and award plaintiffs damages pursuant to 28 U.S.C. §§1331 (federal question), 1332 (diversity jurisdiction), 1350 (alien tort claims act) and 2333 (civil remedies).

## COUNT EIGHT

### PERSONAL INJURY CLAIMS AGAINST
### ISI, PASHA, TAJ, IQBAL and ALI

108.    Plaintiffs restate the allegations in paragraphs 9 – 56 and 68 – 70 above as if fully set forth herein.

109.    During the planning and execution of the Mumbai terrorist attack, defendants ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI) acted intentionally and recklessly.

110. During the planning and execution of the Mumbai terrorist attack, the conduct of defendants defendants ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI) were extreme and outrageous. This extreme and outrageous conduct included, but was not limited to, (a) foreseeing that children such as the infant Moshe Tzvi Holtzberg would be irreparably traumatized when hostages in the Mumbai Chabad House, including the child's father and mother, were violently murdered in plain view of the infant; and (b) foreseeing that individuals such as plaintiff Varagona would be irreparably traumatized when hostages at the Oberoi Trident Hotel, including plaintiff Varagona's companions Naomi Scherr and Alan Scherr, were violently murdered in plain view of plaintiff Varagona, and foreseeing that hostages, such as plaintiff Varagona, would be shot.

111. As a direct and proximate result of the direct acts of international terrorism committed by the ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees if ISI), as set forth above, those defendants have caused plaintiff Varagona and the infant Moshe Tzvi Holtzberg to suffer severe and permanent physical, mental and emotional injuries, damages and losses, including but not limited to the following:

      a. Non-economic damages, including but not limited to, losses suffered as a result of their physical, mental and emotional injuries, including pain and suffering and their loss of enjoyment of life; and

      b. Economic damages, including but not limited to the loss of earnings (plaintiff Varagona only), loss of earning capacity and medical expenses.

112. As a direct and proximate result of the intentional, reckless, extreme and outrageous acts of defendants ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI), the infant Moshe Tzvi Holtzberg and plaintiff Varagona have and continue to

23

suffer from severe emotional distress and plaintiff Varagona has continued to suffer from her physical injuries.

113. Defendants ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI) intended for people such as Moshe Tzvi Holtzberg and plaintiff Varagona to suffer from their severe injuries and distress or were aware of a high probability that their conduct would cause such injuries and distress.

114. By reason of the foregoing, defendants ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI) are each liable to plaintiff Shimon Rosenberg, as Legal Guardian for the infant Moshe Tzvi Holtzberg, and plaintiff Varagona for compensatory damages in excess of $75,000, such amount to be determined by a jury.

115. Further, for their willful, wanton and criminal misconduct, defendants ISI, Pasha, Taj, Iqbal and Ali (as well as other officials, agents and employees of ISI) are each liable to plaintiff Shimon Rosenberg, as Legal Guardian for the infant Moshe Tzvi Holtzberg, and plaintiff Varagona for punitive damages in excess of $75,000, such amount to be determined by a jury.

116. This Court has the authority and jurisdiction to hear plaintiffs claims and award plaintiffs damages pursuant to 28 U.S.C. §§1331 (federal question), 1332 (diversity jurisdiction), 1350 (alien tort claims act) and 2333 (civil remedies).

### COUNT NINE

### PERSONAL INJURY CLAIMS FOR AIDING AND ABETTING AGAINST ISI, PASHA, TAJ, IQBAL AND ALI

117. Plaintiffs restate the allegations in paragraph 9 – 56 and 68 – 70 above as if fully set forth herein.

24

118.    On and prior to November 26, 2008, the ISI, Pasha, Taj, Iqbal and Ali (as well as

other officials, agents and employees of the ISI) acted to advance the goals of LeT, Sayeed,

Lakhvi, Cheema and Majid to terrorize, kill and hurt, among others, United States citizens

(which conduct violated, among other things, United States statutes prohibiting international acts

of terrorism) by aiding and abetting the planning and execution of the Mumbai attacks.

119.    The support, planning, organization and funding of the Mumbai terrorist attack

came from, among other places, United States sources.

120.    As a direct and proximate result of the acts of aiding and abetting the planning

and execution of the Mumbai attacks committed by the ISI, Pasha, Taj, Iqbal and Ali (as well as

other officials, agents and employees if ISI), as set forth above, those defendants have caused

plaintiff Varagona and the infant Moshe Tzvi Holtzberg to suffer severe and permanent physical,

mental and emotional injuries, damages and losses, including but not limited to the following:

> a. Non-economic damages, including but not limited to, losses suffered as a result of
>    these physical, mental and emotional injuries, including pain and suffering and
>    their loss of enjoyment of life; and
>
> b. Economic damages, including but not limited to, the loss of earnings (plaintiff
>    Varagona only), loss of earning capacity and medical expenses.

121.    By reason of the foregoing, defendants ISI, Pasha, Taj, Iqbal and Ali are each

liable to each plaintiff, individually and as the personal representative and/or surviving family

member of their decedents, for compensatory damages in excess of $75,000, such amount to be

determined by a jury.

122.    Further, for their willful, wanton and criminal misconduct, defendants ISI, Pasha,

Taj, Iqbal and Ali are each liable to each plaintiff, individually and as the personal representative

and/or surviving family member of their decedents, for punitive damages in excess of $75,000, such amount to be determined by a jury.

123.    This Court has the authority and jurisdiction to hear plaintiffs claims and award plaintiffs damages pursuant to 28 U.S.C. §§1331 (federal question), 1332 (diversity jurisdiction), 1350 (alien tort claims act) and 2333 (civil remedies).

## JURY DEMAND

Plaintiffs demand  trial by jury on all issues so triable.

Dated:      New York, New York
            November 19, 2010

KREINDLER & KREINDLER

By:     _James P. Kreindler_
            James P. Kreindler (JK7084)
            750 Third Avenue
            New York, NY  10017-5590
            (212) 687-8181
            (212) 972-9432 (Fax)

-- and --

THE SILVERMAN LAW FIRM
16 Squadron Boulevard
New City, NY  10956

26