UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
SHIMON ROSENBERG, et al., KIA SCHERR, :
et al., EMUNAH CHROMAN, et al., LINDA :
RAGSDALE, et al., AUTUMN GILLES, et al., :
: **OPINION AND ORDER**
            Plaintiffs,   :   10-CV-5381 (DLI) (CLP)
:   10-CV-5382 (DLI) (CLP)
:   10-CV-5448 (DLI) (CLP)
           -against-   :   11-CV-3893 (DLI) (CLP)
:   12-CV-5816 (DLI) (CLP)
LASHKAR-E-TAIBA et al., :
:
           Defendants. :
:
----------------------------------------------------------- x
**DORA L. IRIZARRY, U.S. District Judge:**

The plaintiffs in these cases (collectively, "Plaintiffs") are American and Israeli citizens who were injured or whose relatives were killed during the 2008 terrorist attacks in Mumbai, India. (Complaint, 10-CV-5381(DLI)(CLP) ("Complaint") ¶¶ 1-5; Complaint, 10-CV-5382(DLI)(CLP) ("Scherr Complaint") ¶ 1; Complaint, 10-CV-5448(DLI)(CLP) ("Chroman Complaint") ¶ 1; Complaint, 11-CV-3893(DLI)(CLP) ("Ragsdale Complaint") ¶ 1; Complaint, 12-CV-5816(DLI)(CLP) ("Gilles Complaint") ¶ 1.)[1] Plaintiffs assert claims arising under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333, against the terrorist organization Lashkar-e-Taiba ("LeT"), and several of its known leaders, as well as the Inter-Services Intelligence Directorate of the Islamic Republic of Pakistan ("ISI"), and two of its former Directors General, Ahmed Shuja Pasha ("Pasha") and Nadeem Taj ("Taj"). (*See generally* Compl.) Defendants ISI, Pasha, and Taj (collectively, the "Moving Defendants") move, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for

---

[1] These five actions are litigated as related cases, with the Rosenberg (10-CV-5381(DLI)(CLP)) docket as the lead case. (*See* Notice of Related Case, Dkt. Entry No. 34.) Unless it is necessary to distinguish among the cases, the Court will refer to the Complaint in the Rosenberg action for the factual recitation.

dismissal of each of the complaints against them for lack of subject matter jurisdiction (*see* Moving Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mem."), Dkt. Entry No. 12), which Plaintiffs oppose (*see* Plaintiffs' Memorandum of Law in Opposition to Moving Defendants' Motion to Dismiss ("Pls.' Opp'n"), Dkt. No. 15). For the reasons set forth more fully below, the motion to dismiss is granted. The Moving Defendants, a foreign sovereign state and two foreign officials, are immune from these actions.

## BACKGROUND

Plaintiffs allege that LeT, a terrorist organization designated by the United States government as a Foreign Terrorist Organization, bases its operations in Pakistan. (Compl. ¶ 6.) Plaintiffs further allege that Pakistani members of LeT planned, trained, and prepared for the Mumbai terror attacks in Pakistan. (*Id*. ¶ 21.) All ten of the terrorists who committed the Mumbai terror attacks were Pakistani nationals. (*Id*. ¶ 20.) Over the course of four days, beginning on November 26, 2008, the LeT terrorists killed 166 individuals and wounded 304 others at various locations in Mumbai. (*Id*. ¶ 19.)

Plaintiffs allege that the ISI "was a Pakistani organization carrying out intelligence gathering and operations domestically and internationally on behalf of the military of the Islamic Republic of Pakistan." (*Id*. ¶ 11.) Plaintiffs claim further that the "ISI has long nurtured and used international terrorist groups, including LeT, to accomplish its goals and has provided material support to LeT and other international terrorist groups." (*Id*.) With respect to the Mumbai terror attacks, Plaintiffs allege that the ISI "provided critical planning, material support, control and coordination of the attacks." (*Id*. ¶ 21.) Defendant Taj purportedly "was the Director General of the ISI from September 2007 until September 2008." (*Id*. ¶ 13.) Defendant Pasha purportedly has been the Director General of the ISI since September 2008. (*Id*. ¶ 12.)

2

Fairly early in the litigation of these cases, the Moving Defendants sought dismissal for lack of subject matter jurisdiction. The ISI, an agency for the government of Pakistan, asserted that it was immune from jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1603 *et seq*. ("FSIA"). (Defs.' Mem. at 10-14.) Pasha and Taj, as foreign officials, asserted that they were entitled to immunity for the acts alleged in the Complaint as those acts were alleged to have been undertaken in their official capacity. (*Id*. at 15-18.) Additionally, the Moving Defendants sought dismissal on the ground that the claims presented a "political question" inappropriate for resolution by the judicial branch.[2] (*Id*. at 18-30.) Plaintiffs opposed their motion contending that: (1) the Court should defer its ruling on sovereign immunity until after Plaintiffs had conducted limited discovery and the Executive Branch had the opportunity to submit a statement of interest; and (2) the Court should deny the political question motion as these actions are fully justiciable. (*See generally* Pls.'s Opp'n.)

On April 23, 2012, the Court stayed the case and requested that the United States Department of State ("Department of State") provide the Court with a statement of interest on the question of whether the Moving Defendants are immune from suit. (*See* Apr. 23, 2012 Order, Dkt. Entry No. 23.) On December 17, 2012, the United States submitted its Statement of Interest and Suggestion of Immunity ("Statement of Interest" or "Stmt."). (Stmt., Dkt. Entry No. 35.) It is the position of the United States that the ISI, a fundamental part of the government of Pakistan, qualifies for foreign state immunity under the FSIA and no exception to immunity applies. (Stmt. at 2-6.)[3] Furthermore, it is the position of the United States that defendants Pasha and Taj are entitled to immunity from civil suit under federal common law because they

---

[2] As the Court has determined that the Plaintiffs' claims must be dismissed on sovereign immunity grounds, the Court need not address the "political question" issue raised by Defendants.

[3] The United States expressed no views as to the merits of the Plaintiffs' claims. (Stmt. at 1.)

3

are foreign officials who were sued in their official capacities. (*Id*. at 7-11.)

Plaintiffs submitted a Response to the Statement of Interest, arguing that defendants Pasha and Taj are not entitled to immunity. (Plaintiffs' Response to Stmt. ("Pls.' Resp."), Dkt. Entry No. 40.) Notably, Plaintiffs' Response lacked any opposition to the United States' position as to the ISI's immunity. Indeed, the parties' subsequent submissions focused on whether defendants Pasha and Taj, foreign officials, are immune from these actions. Plaintiffs contend that defendants Pasha and Taj are not entitled to foreign official immunity because they "individually engaged in orchestrating the Mumbai attacks and . . . they thus are independently liable for acts of murder, torture and terrorism, classic violations of *jus cogens* norms."[4] (*Id*. at 1.) Plaintiffs assert that the United States' "view of common law immunity is not dispositive" and that Plaintiffs "must be afforded an opportunity to conduct discovery on the question of whether Pasha and Taj participated in the torture, extrajudicial killing, sabotage and hostage taking of the United States victims of the Mumbai terror attacks, as individuals who violate internationally accepted *jus cogens* norms, even if under color of official authority . . . ." (*Id*.)

The Moving Defendants oppose Plaintiffs contending that: (1) Plaintiffs' conceded earlier in the litigation that, if the United States suggested that defendants Pasha and Taj were immune, dismissal would be appropriate; (2) the United States' suggestion of immunity for defendants Pasha and Taj is entitled to deference; (3) there is no *jus cogens* exception to federal common law on foreign official immunity; and (4) Plaintiffs are not entitled to discovery on this issue. (Moving Defendants' Memorandum of Law in Opposition to Pls.'s Resp. ("Defs.' Opp'n

---

[4] "A *jus cogens* norm, also known as a 'peremptory norm of general international law,' can be defined as 'a norm accepted and recognized by the international community of States as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character." *Yousuf v. Samantar*, 699 F. 3d 763, 775 (4th Cir. 2012) (quoting *Vienna Convention on the Law of Treaties* art. 53, May 23, 1969, 1155 U.N.T.S. 331). Plaintiffs assert that "acts of murder, torture and terrorism" are "classic violations of *jus cogens* norms." (Pls.' Resp. at 1.)

to Pls.' Resp."), Dkt. Entry No. 41-1.)[5]

## DISMISSAL UNDER RULE 12(b)(1)

The FSIA provides the sole basis for the exercise of jurisdiction over a foreign state in United States courts. *Argentine Repub. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); *see also USAA Cas. Ins. Co. v. Permanent Mission of Repub. of Namibia*, 681 F. 3d 103, 107 (2d Cir. 2012). Under the FSIA, a foreign state includes the foreign sovereign itself as well as its political subdivisions, agencies and instrumentalities. *See* 28 U.S.C. §§ 1603(a) and (b); *see also* H.R. Rep. No. 94-1487, at 15 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6613. A foreign state is presumptively immune from the jurisdiction of United States courts unless a specified exception to the FSIA applies. *See* 28 U.S.C. § 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."). Accordingly, absent the applicability of an exception set forth in 28 U.S.C. §§ 1605 to 1607, a federal court lacks subject matter jurisdiction over any claims brought against a foreign state. *USAA Cas. Ins. Co.*, 681 F. 3d at 107.

In the context of a Rule 12(b)(1) challenge to subject matter jurisdiction under the FSIA, the Court looks to "the substance of the allegations to determine whether one of the exceptions to the FSIA's general exclusion of jurisdiction over foreign sovereigns applies." *Robinson v. Government of Malaysia*, 269 F. 3d 133, 140 (2d Cir. 2001) (quotation marks and citations omitted). Moreover, when a foreign state moves to dismiss a complaint on the grounds that the court lacks jurisdiction over the foreign state, "the Court *must* look beyond the pleadings to the factual record to determine whether to grant the motion to dismiss." *Servaas Inc. v. Repub. of Iraq*, 686 F. Supp. 2d 346, 353-354 (S.D.N.Y. 2010) (citations omitted) (emphasis in original).

---

[5] The Moving Defendants (with Plaintiffs' consent) requested leave to file their opposition to Plaintiffs' Response, and attached their memorandum of law for consideration. The Moving Defendants' request is granted. Thus, the Defendants' Opposition is properly before this Court.

To determine whether a court lacks jurisdiction over a defendant pursuant to the FSIA, the defendant has the burden to "present a *prima facie* case that it is a foreign sovereign." *Virtual Countries, Inc. v. Repub. of South Africa*, 300 F. 3d 230, 241 (2d Cir. 2002) (quotation marks omitted). Once the defendant meets that initial burden, "the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." *Rogers v. Petroleo Brasileiro, S.A.*, 673 F. 3d 131, 136 (2d Cir. 2012) (quoting *Kensington Int'l Ltd. v. Itoua*, 505 F. 3d 147, 153 (2d Cir. 2007)). The plaintiff may meet his burden through the allegations contained in the complaint and the undisputed facts placed before the court by the parties. *See Virtual Countries*, 300 F. 3d at 241 (citation omitted). "Where the plaintiff satisfies [his or] her burden that an FSIA exception applies, the foreign sovereign then bears the ultimate burden of persuasion that the FSIA exception does not apply." *Swarna*, 622 F. 3d at 143 (citation omitted).

## DISCUSSION

### I. Legal Standards

As one court has explained, "[t]he common law of foreign sovereign immunity is, perhaps uncharacteristically, facile and straight-forward: if the State Department submits a 'Suggestion of Immunity,' then the district court 'surrender[s] its jurisdiction.'" *Tawfik v. Al-Sabah*, 2012 WL 3542209, at *2 (S.D.N.Y. Aug. 16, 2012) (alteration in original) (quoting *Samantar*, 560 U.S. 305, 130 S. Ct. at 2284). The Supreme Court announced this two-step procedure in *Schooner Exchange v. McFaddon*, 7 Cranch 116, 3 L. Ed. 287 (1812). Since then, courts have interpreted *Schooner Exchange* "as extending virtually absolute immunity to foreign sovereigns as 'a matter of grace and comity.'" *Samantar v. Yousuf*, 560 U.S. 305, ___, 130 S. Ct. 2278, 2284 (2010) (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486

(1983)). Further, courts have extended this two-step procedure to provide foreign officials immunity from civil suits. *See id*. at ___, 130 S. Ct. at 2284-85.

Yet, there was some confusion with respect to the interplay between the FSIA and the federal common law on sovereign immunity as it relates to the assertion of sovereign immunity by defendants who are foreign officials. In *Samantar v. Yousuf*, the Supreme Court clarified that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, governs determinations of sovereign immunity for foreign states, but not for foreign officials. *Id*. at ___, 130 S. Ct. at 2292-93. The Court explained that, in enacting the FSIA, Congress did not intend to "eliminate[] the State Department's role in determinations regarding individual official immunity," a procedure that developed as a matter of common law. *Id*. at ___, 130 S. Ct. at 2291. Indeed, as the Court recognized, the Department of State, too, "has from the time of the FSIA's enactment understood the Act to leave intact the Department's role in official immunity cases." *Id*. at ___, 130 S. Ct. 2291 n.19. Thus, suits against foreign officials that are not subject to the immunity provided in the FSIA, "may still be barred by foreign sovereign immunity under the common law." *Id*. at ___, 130 S. Ct. at 2292.

**II.     Analysis**

Turning to the instant action, the United States submitted the Suggestion of Immunity, taking the position that the ISI was immune from suit (Stmt. at 2-6). The United States also took the position that defendants Pasha and Taj, former Directors General of the ISI, are immune pursuant to the common law of foreign sovereign immunity as they were sued in their official capacities for activity arising out of their official duties. (Stmt. at 7-11.)

### A. Defendant ISI

Under the FSIA, and the Supreme Court's clarification regarding its breadth, the Court must surrender jurisdiction once the United States has taken the position that a foreign entity is entitled to sovereign immunity and there is no indication that an exception to the FSIA applies. As set forth above, it is the position of the United States that the ISI is entitled to immunity as it is an agency of the government of the Islamic Republic of Pakistan and it performs core investigative and military functions. (Stmt. at 2-6.) The United States further explained that none of the exceptions to the FSIA are applicable to the ISI in these actions. (*Id*.) Plaintiffs have not opposed the United States' position with respect to the ISI, nor have they argued that any of the exceptions to the immunity that the ISI derives from the FSIA are applicable in this action. Based on the pleadings and the record in these actions, the Court is satisfied that the ISI has met its burden under the FSIA and the ISI is entitled to immunity from these actions. *See Gomes v. ANGOP*, *et al.*, 2012 WL 3637453, at *11 (E.D.N.Y. Aug. 22, 2012) (concluding that various ministries of the government of Angola were immune from suit under the FSIA as those ministries were "organs of the state with core governmental functions" thereby "entitled to the presumption of immunity" and plaintiff failed to establish any exception to the FSIA). Accordingly, the ISI's motion to dismiss the complaint is granted. The complaint against the ISI is dismissed with prejudice.

### B. Defendants Pasha and Taj

The remaining issue is whether defendants Pasha and Taj, foreign officials, are immune from these actions. The United States based its position on a detailed analysis of the Complaint conducted by the Department of State. (*See* Letter from Harold Hongju Koh, Department of State, attached as Ex. 1 to Stmt. ("Koh Letter").) The Department of State "determined that

former ISI Directors General Pasha and Taj enjoy immunity from suit with respect to this consolidated action." (*Id*. at 2.) In reaching this conclusion, the Department of State explained that:

> [T]he complaint contains largely unspecific and conclusory allegations against the Directors General, and relies centrally on plaintiff's incorrect view that the ISI is not part of the Government of Pakistan. By expressly challenging defendants Pasha's and Taj's exercise of their official powers as Directors General of the ISI, plaintiff's claims challenge defendants Pasha's and Taj's exercise of their official powers as officials of the Government of Pakistan. The complaint expressly refers not to any private conduct by defendants, but only to Pasha's and Taj's actions as Directors General of the ISI. All of their allegations in the Complaint are bound up with plaintiff's claims that the former Directors General were in full command and control of the ISI and allegedly acted entirely within that official capacity. The plaintiffs repeatedly assert that the former Directors General 'exerted full command and control' over the ISI. Compl. ¶ 37. On their face, acts of defendant foreign officials who are sued for exercising the powers of their office are treated as acts taken in an official capacity, and plaintiffs have provided no reason to question that determination.

(*Id*. at 1-2.)

As a preliminary matter, it was implicit in Plaintiffs' earlier filings that the Statement of Interest would be dispositive on the issue of sovereign immunity. The Plaintiffs described the United States' potential opinion as "critical" and "highly probative" on the issue of immunity. (Pls.' Opp'n at 11-16.) Plaintiffs further urged this Court to defer its ruling on the Moving Defendants' motion until the United States had the opportunity to submit a statement. (*Id*. at 2-3.) Consequently, the Court issued an order staying the case and requesting that the United States submit a statement. Understandably, Plaintiffs now seek to distance themselves from the Statement of Interest, which is unfavorable to the survival of their claims. However, given Plaintiffs' prior position in this case, the Court would be justified in deeming Plaintiff's current

9

arguments against the United States' position as waived. Nonetheless, the Court addresses below the merits of Plaintiffs' contention that Pasha and Taj are not entitled to foreign official immunity.

It is the position of the Executive Branch that defendants Pasha and Taj, former Directors General of the ISI, are entitled to foreign sovereign immunity under the common law as foreign officials who were sued in their official capacity for acts conducted in their official capacity. Under the common law on sovereign immunity, the Court's inquiry ends here. *See Matar v. Dichter*, 563 F. 3d 9, 14 (2d Cir. 2009) (affirming dismissal of a suit against a former head of the Israeli Security Agency for whom the United States submitted a Suggestion of Immunity as the official was "immune from suit under common-law principles that pre-date, and survive, the enactment of [the FSIA]").

Plaintiffs argue that the United States' determination as to defendants Pasha and Taj is not controlling. Plaintiffs contend that courts should afford a different level of deference to the United States' determinations depending upon whether individual defendants are shielded from civil liability under head of state or foreign official immunity. Plaintiffs do not appear to question the well settled authority that courts should afford "absolute deference" to the United States' determination that an individual defendant is protected from civil suit by head of state immunity. (Pls.' Resp. at 2.) As Plaintiffs recognize, it is the province of the Executive Branch to determine whether an individual is entitled to immunity as a sitting head of state because that determination "rests on a defendant's status as the representative of the sovereign." (*Id*. at 2 n.1.) However, Plaintiffs maintain that "there is no equivalent constitutional basis suggesting that the views of the Executive Branch control questions of foreign official immunity" as such immunity derives from the official's specific conduct at issue on behalf of the sovereign and not the

individual's status as the sovereign. (*Id*. at 2 (quoting *Yousuf v. Samantar*, 699 F. 3d 763, 773 (4th Cir. 2012).)

In making this status and conduct based distinction with respect to foreign official immunity, Plaintiffs posit that, when a foreign official, who is only entitled to conduct based immunity, violates a *jus cogens* norm of customary international law, the foreign official is not acting in official or state capacity, as no state has the authority to engage in such conduct. (Pls.' Resp. at 2-5.) According to Plaintiffs, Pasha and Taj are not immune from these actions because their specific acts at issue—their alleged involvement in terroristic acts and summary executions of civilians—are classic examples of *jus cogens* violations and, because they are foreign officials and not sitting heads of state, the court is free to make its own determination as to whether they are immune. (*Id*. at 2.)

Plaintiffs' proposed conduct and status based distinction is a complicated and novel issue of law. Indeed, as set forth more fully below, a circuit split has emerged. The Fourth Circuit recently noted that "[t]here has been an increasing trend in international law to abrogate foreign official immunity for individuals who commit acts, otherwise attributable to the State, that violate *jus cogens* norms . . . ." *Id*. at 776. "American courts have generally followed the foregoing trend, concluding that *jus cogens* violations are not legitimate official acts and therefore do not merit foreign official immunity but still recognizing that head-of-state immunity, based on status, is of an absolute nature and applies even against *jus cogens* claims." *Id*. (summarizing cases). The Fourth Circuit concluded that, "under international and domestic law, officials from other countries are not entitled to foreign official immunity for *jus cogens* violations, even if the acts were performed in the defendant's official capacity." *Id*. at 777-78 (denying former foreign official's motion to dismiss based on foreign official sovereign

11

immunity "[b]ecause this case involves acts that violated *jus cogens norms* . . . we conclude that [the foreign official] is not entitled to conduct-based official immunity under the common law, which in this area incorporates international law").

However, the exception to foreign official immunity that the Fourth Circuit announced in *Yousuf* is not recognized in this Circuit. Indeed, in *Matar*, the Second Circuit reached the opposite conclusion, holding that "[a] claim premised on the violation of *jus cogens* does not withstand foreign sovereign immunity." *Matar*, 563 F. 3d at 15. In reaching that result, the Second Circuit affirmed its prior holding that there is no *jus cogens* exception to the FSIA, *see Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F. 3d 239, 242-45 (2d Cir. 1996) (rejecting the argument that "a foreign state should be deemed to have forfeited its sovereign immunity whenever it engages in conduct that violates fundamental humanitarian standards"), and further expanded upon that holding to reject such an exception to the common law on foreign official immunity. *Matar*, 563 F. 3d at 14-15.

While the Fourth Circuit's approach would allow Plaintiffs to proceed to the merits of their claims, rather than succumbing to dismissal on a procedural ground, this Court is bound by the law of this Circuit. Moreover, it is uncertain whether *Yousuf* will have enduring precedential value in the Fourth Circuit, as the defendant in that case, who was denied foreign official immunity, has a petition for a writ of certiorari pending before the Supreme Court. *See* Petition for Writ of Certiorari, *Samantar v. Yousuf*, No. 12-1078, 2013 WL 836952 (Mar. 4, 2013). Accordingly, the claims against Pasha and Taj are dismissed without prejudice. If the Supreme Court grants certiorari in *Samantar v. Yousuf*, and affirms the Fourth Circuit's exception to foreign official immunity, Plaintiffs may move to reinstate their claims against defendants Pasha and Taj.

## CONCLUSION

The Moving Defendants' motion to dismiss is granted. These related actions are dismissed with prejudice against the ISI and without prejudice against defendants Pasha and Taj.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2013

_____/s/_____
DORA L. IRIZARRY
United States District Judge